USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/10/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RICHARD BAEZ,

                Plaintiff,

   -v-

RCO RESTORATION CORP., *et al.*,

               Defendants.
----------------------------------------------------------------X

**REPORT & RECOMMENDATION**

20-CV-1066 (VSB) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Vernon S. Broderick, United States District Judge:**

       Plaintiff Richar Baez was employed as a general construction worker at RCO Restoration from January 2018 until August 2019.[1]  Baez alleges that RCO Restoration, William Morocho, and Darwin Doe violated the Fair Labor Standards Act and New York Labor Law by failing to pay him for all of the hours he worked and for overtime wages, and by failing to provide him with wage statements and wage notices.  On December 17, 2020, a default judgment as to liability was entered against RCO Restoration and Morocho, and on December 24, 2020, Baez voluntarily dismissed defendant Darwin Doe.  The matter was then referred to me for an inquest into damages.

       For the reasons which follow, I recommend that Baez be awarded **$61,287.50** in damages.

---

[1] Baez mistakenly commenced this action under the name Richard Baez, when, in fact, his name is Richar Baez.  *See* Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"), Dkt. No. 49, ¶ 1.

## I. BACKGROUND

**A. Facts**

The following facts, which are drawn from a review of Baez's pleadings, affidavits, and submissions related to this inquest, are deemed established for the purpose of determining the damages to which he is entitled. *See, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (internal citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendants'] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [their] favor[.]") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Defendant William Morocho owns and operates a construction business named RCO Restoration Corp. ("RCO"). Complaint ("Compl."), Dkt. No. 1 ¶¶ 6, 8. From January 2018 until August 2019, Baez was employed by Defendants as a general construction worker. *Id.* ¶ 23. During his employment, Baez worked approximately 46 hours per week except for one week per month when he worked a nine-hour shift on Saturdays, resulting in a 55-hour workweek. *Id.* ¶ 24. Defendants compensated Baez with a daily fixed salary of $150 per workday regardless of the actual hours worked. *Id.* at ¶ 25. Baez alleges that Defendants failed to compensate him for his fixed salary for all the weeks worked, failed to pay him overtime wages despite working more than 40 hours, as required by the Fair

Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and failed to provide him with wage statements and wage notices, as required by NYLL. *Id.* ¶¶ 25–33.

## B. Procedural History

On February 7, 2020, Baez commenced this action by filing a complaint against RCO, Morocho, and Darwin Doe. Dkt. No. 1. Following Defendants' failure to timely answer or otherwise respond to the complaint, and having been given permission by the Court to seek a default judgment, Baez filed a proposed certificate of default judgment along with a supporting affidavit with exhibits. Proposed Certificate of Default, Dkt. No. 35; Affidavit of Anne Seelig dated November 13, 2020 ("Seelig Aff.") and attached exhibits, Dkt. Nos. 38–38-8.[2] On November 16, 2020, the Court issued an order to show cause why it should not enter a default judgment against Defendants. Dkt. No. 40. Defendants failed to respond to the order to show cause or to appear at the hearing. The Court subsequently entered a default judgment against Defendants RCO and Morocho as to liability and directed Baez to submit a letter detailing authority related to whether the Court was authorized to enter a default judgment against Darwin Doe, who had been sued under an alias and whose last name was unknown. Dkt. No. 43. Unable to find such authority, Baez submitted a notice of voluntary dismissal as to Darwin Doe, which the Court so ordered on December 28, 2020. Dkt. Nos. 44–46.

---

[2] While Seelig's submission is denominated an "affidavit," it is not sworn to or notarized but merely states that she "deposes and states."

On December 28, 2020, this case was referred to me to conduct an inquest. Dkt. No. 47. I directed the parties to file their submissions concerning damages. Dkt. No. at 48. Thereafter, on January 25, 2021, Baez submitted his proposed findings of fact and conclusions of law, requesting damages in the amount of $42,657.82. Proposed Findings, Dkt. No. 49, ¶ 30. RCO and Morocho have filed no opposition to Baez's inquest submissions.

## II.  DISCUSSION

### A.  Legal Standards

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "[E]ven when the defendant[s] default[ ] and [are] not present to object," Baez has the burden of establishing his entitlement to "damages . . . based on admissible evidence." *House v. Kent Worldwide Mach. Works. Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010). To establish damages upon default, Baez must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).

The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "'as long as [the court has] ensured

4

that there was a basis for the damages specified in the default judgment.'" *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)). In this case, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman,* No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok,* 873 F.2d at 40), *adopted by* 2016 WL 4532201 (Aug. 29, 2016).

An employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" *Jiao v. Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 689 (1946)). "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden." *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (internal citations and quotation marks omitted), *adopted by* Order dated Aug. 9, 2012 (Dkt. No. 20). Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Kernes v. Glob. Structures, LLC,* No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (internal citations and quotation marks omitted) (alterations in original).

**B.     Analysis**

As a threshold matter, there is no applicable statute of limitations defense under NYLL or the FLSA here.  Under NYLL, the statute of limitations is six years, and under the FLSA, the statute of limitations is two years for standard violations and three years for willful violations.  *See* NYLL § 663(3); 29 U.S.C. § 255(a).  Baez alleges that Defendants acted willfully (Compl. ¶¶ 30–33), and the Court accepts this allegation as true given Defendants' default.  *See, e.g., Wicaksono v. XYZ 48 Corp.*, 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (because defendant defaulted and complaint alleged willfulness, plaintiffs entitled to willfulness finding and application of FLSA three-year statute of limitations), *adopted by* 2011 WL 2038973 (May 24, 2011).[3]  Therefore, the limitations period for all of Baez's federal claims is three years.  *See, e.g., Rodriguez v. Queens Convenience Deli* Corp., No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  Because Baez alleges that he began working for Defendants in January 2018 (Compl. ¶ 23) and he commenced this action on

---

[3] In *Whiteside v. Hover-Davis, Inc.*, -- F.3d --, 2021 WL 1619488 (2d Cir. Apr. 27, 2021), the Second Circuit recently held that mere allegations of willfulness are insufficient for a plaintiff to secure the benefits of the three-year exception to the FLSA's general two-year statute of limitations at the pleading stage.  It ruled that for the three-year exception to apply, a plaintiff must plead facts plausibly giving rise to an inference of willfulness.  The *Whiteside* Court did not address what impact, if any, its ruling would have when a defendant defaults and willfulness is therefore inferred as a matter of law assuming it has been pled.  In any event, because Baez began working in 2018, and is being awarded damages under New York Labor Law, which has a six-year statute of limitations, this issue need not be further considered in this case.

February 7, 2020, less than three years after Baez's start date, his employment period is within both statutes of limitations. *See id.* ¶ 23; Proposed Findings ¶ 23.

### 1.     Unpaid Wages

Baez worked for Defendants from January 2018 until August 2019. During that time, he worked two different schedules: (1) Baez alleges that he regularly worked 46 hours over a span of five days per week, but (2) once a month he would also work on Saturday for nine hours for a total of 55 hours for those six-day weeks. Affidavit of Richar Baez dated November 3, 2020 ("Baez Aff."), Dkt. No. 38-6 ¶¶ 2–3.[4] He also alleges that he was paid a daily fixed salary of $150 per workday and, as a result, received $750 for the weeks he worked five days. *Id.* ¶4. "Under both the FLSA and NYLL, however, there is a presumption that such a weekly salary covers only the first forty hours, unless the parties 'intend and understand the weekly salary to include overtime hours *at the premium rate.*'" *Guallpa v. N.Y. Pro Signs Inc.*, No. 11-CV-3133 (LGS) (FM), 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014) (quotation omitted), *adopted by* 2014 WL 4105948 (Aug. 18, 2014). Dividing the total weekly salary by 40 hours, Baez's hourly rate is $18.75. *See* Seelig Aff., Ex. G, Dkt. No. 38-7. Accordingly, Baez was owed $18.75 per hour for up to 40 hours per week of work.

In addition, both federal and state law require employers to pay employees overtime wages in the amount of one and one-half times the minimum wage for time worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); 12 NYCRR §§

---

[4] While Baez's submission is denominated an "affidavit," it is actually in the form of a declaration submitted pursuant to 28 U.S.C. § 1746.

146-1.4, 142-2.2; *Pequero v. Montafon, LLC,* No. 18-CV-12187 (DF), 2020 WL 4016756, at *4 (S.D.N.Y. July 15, 2020) (FLSA "requires employers to pay overtime for employment in excess of [40 hour per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed.") (internal quotation omitted) (quoting 29 U.S.C. § 207(a)(1)); *Yeh v. Han Dynasty, Inc.,* No. 18-CV-6018 (PAE), 2020 WL 883501, at *5 (S.D.N.Y. Feb. 24, 2020) (citing 29 U.S.C. § 207(a), 12 NYCRR § 142-2.2)).

Here, Baez worked more than 40 hours per week and, therefore, is entitled to overtime pay for those hours. Courts calculate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half. That rate is then multiplied by the number of hours in excess of forty hours the employee worked each week." *Rosendo v. Everbrighten Inc.,* No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by* 2015 WL 4557147 (July 28, 2015); *Kernes v. Glob. Structures, LLC*, No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016) ("[A]n employee is entitled to be paid for overtime hours (*i.e.*, hours exceeding 40 per week), at a 'rate not less than one and one-half times the regular rate at which [the employee] is employed.'") (citing 29 U.S.C. § 207(a)(1)). Accordingly, Baez's overtime rate is $28.125 (*i.e.*, one and one-half times his regular rate of $18.75).

Using Baez's regular and overtime rates, the Court calculates the following wages and overtime owed for his five-day work weeks:

**Table 1: Wage and Overtime ("OT") Compensation Baez Should Have Earned**

|  | Rate | Hours Per Week Worked | Weeks Worked[5] | Amount Owed |
|---|---|---|---|---|
| **Regular Time** | $18.75 | 40 | 87 | $65,250 |
| **OT** | $28.125 | 6 | 87 | $14,681.25 |

As discussed above, during the span of his employment with RCO, Baez also worked a nine-hour shift on one Saturday per month in addition to his normal 46-hour work week:

**Table 2: OT Compensation for Saturday Work Baez Should Have Earned**

| Saturdays | Rate | Hours Worked | Saturdays Worked[6] | Amount Owed |
|---|---|---|---|---|
| **OT** | $28.125 | 9 | 20 | $5,062.50 |

Based on these calculations, Baez was owed a total of **$84,993.75 ($65,250 + $14,681.25 + $5,062.50)**.[7]

---

[5] As Baez stated in his damages calculations, Baez worked 87 weeks from January 1, 2018 to August 31, 2019.  *See* Seelig Aff., Ex. G.

[6] Although the Complaint states that he worked two Saturdays per month, Baez's affidavit indicates that he worked only one Saturday per month.  *Compare* Compl. ¶ 24 *with* Baez Aff. ¶ 3.  The Court will rely on Baez's affidavit and, therefore, will calculate only 20 Saturdays as there are 20 months between January 2018 and August 2019.

[7] Baez's damages calculations incorrectly calculated the overtime rate by multiplying Baez's regular rate by one half instead of multiplying the rate by one and one half, resulting in a substantially lower amount of overtime wages owed.  *See* Seelig Aff. Ex. G.  The Court has used the correct overtime wage rate, which is the regular rate multiplied by one and one half.

Next, the Court calculates Baez's unpaid wages by adding the total wages owed and subtracting the amount of pay received. Baez alleges that Defendants paid him approximately $150 per day, which amounts to $65,250 for his five-day weeks and an additional $150 per day for 20 Saturdays, which amounts to $3,000, for a total of $68,250. However, Baez also claims that Defendants made certain underpayments. First, Baez alleges that he was not paid for his Saturday work six times during his employment, totaling $900. Seelig Aff. ¶ 17; Baez Aff. ¶ 4. Second, Baez claims that he was regularly underpaid by about $200 twice per month, for a total underpayment of $8,700 during his employment.[8] Baez Aff. ¶ 6; Compl. ¶ 26. According to the Court's calculation, however, Baez worked 20 months and therefore an underpayment of $200 twice per month amounting to $8,000, not $8,700, is appropriate.[9] In light of these underpayments, the amount of wages Baez actually received is the difference between $68,250 and $8,900, or **$59,350**.

Since Baez was owed $84,993.75, but was only paid $59,350, the principal wages due to Baez is **$25,643.75**.

---

[8] Baez notes that he was underpaid by $200 approximately *once* per month in the Seelig Affidavit. Seelig Aff. ¶ 18. However, this appears to be an error because, according to the Baez Affidavit and the Complaint, Baez was underpaid by $200 approximately *twice* per month. Baez Aff. ¶ 6; Compl. ¶ 26. Accordingly, the Court will calculate the $200 underpayment as occurring twice per month.

[9] Baez calculates this underpayment by calculating a weekly deduction of $100 (Seelig Aff., Ex. G), but because Baez alleges in his complaint that he was underpaid by $200 twice per month (Compl. ¶ 26; *see* Seelig Aff. ¶ 18), the Court finds it appropriate to calculate it on a monthly basis, as alleged.

### 2. Liquidated Damages

Baez also seeks liquidated damages. Compl. ¶¶ 43, 53; Proposed Findings ¶¶ 22, 24.  Under state and federal law, employees are entitled to liquidated damages "equal to [100%] of the total of such underpayments found to be due," "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL §§ 198(l-a), 663(1); 29 U.S.C. §§ 216(b), 260.[10]  "Courts deem defendants' actions willful where they have defaulted and . . . such defaulting defendants will have obviously made no showing of good faith."  *Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017) (quoting *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.,* No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016), *adopted by* 2016 WL 6879258 (Nov. 21, 2016)), *adopted as modified,* 2017 WL 1968677 (May 11, 2017).

Baez requests liquidated damages in the amount of the unpaid regular and overtime wages under NYLL and the FLSA.  Proposed Findings ¶¶ 22, 24, 28.  Because Defendants have defaulted, I recommend that Baez receive liquidated damages in the amount of **$25,643.75**.

---

[10] Since the Second Circuit's decision in *Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018), it has been settled law that a plaintiff may not receive "duplicative liquidated damages" under both the FLSA and NYLL.

### 3. Statutory Damages

Under New York's Wage Theft Prevention Act ("WTPA"), employers must provide to employees, "with every payment of wages," a statement that lists the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages . . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

NYLL § 195(3).

The WTPA also requires that employers provide each employee with a wage notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

NYLL § 195(1)(a).

Employees who are not provided a wage notice within ten business days of their first day of work can recover damages of "$50 for each workday that a violation occurs or continues to occur, not to exceed $5,000," and employees can

12

recover "$250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." *Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635 (JLC), 2019 WL 4195194, at *5 (S.D.N.Y. Sept. 5, 2019) (citation omitted).

Baez alleges that he never received a wage notice or a wage statement. Compl. ¶¶ 27, 29; Baez Aff. ¶ 7. Because Baez worked more than 100 days for Defendants, he is entitled to the maximum $5,000 for wage statement violations and $5,000 for wage notice violations, for a total of **$10,000**.

\*             \*             \*

In sum, Baez is entitled to total damages in the amount of **$61,287.50 ($25,643.75 x 2 + $10,000)**.

### III.   CONCLUSION

For the foregoing reasons, I recommend that Baez be awarded **$61,287.50**.

Baez has requested that "[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." Proposed Findings ¶ 32 (citing NYLL § 198(4)). Because the Court is recommending that damages be awarded under NYLL, the amount of the judgment should automatically increase if the conditions set forth in § 198(4) are met. *See, e.g., Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787 (JCM), 2019 WL 3715086, at *2 (S.D.N.Y. Aug. 7, 2019), *aff'd*, 812 F. App'x 49 (2d Cir. 2020); *Hernandez v.*

13

*Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *36 (S.D.N.Y. June 9, 2016).

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, United States Courthouse, 40 Foley Square, New York, New York, 10007 and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 10, 2021
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

14